# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 24-638V**

| | |
|---|---|
| BAHAELDIN HUSSEIN,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: July 28, 2026 |

*Laura Levenberg, Muller Brazil, LLP, Dresher, PA, for Petitioner.*

*James Connor Daughton, U.S. Department of Justice, Washington, DC, for Respondent.*

## RULING ON ENTITLEMENT[1]

On April 23, 2024, Bahaeldin Hussein filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") after receiving influenza ("flu") and a pneumococcal vaccines on November 1, 2022. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons set forth below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I. Relevant Procedural History

On January 30, 2025, Respondent filed a Rule 4(c) Report opposing compensation on the grounds that Petitioner could not meet the Act's severity requirement. Respondent's Rule 4(c) Report ("Report"), ECF No. 15 at 6-8. On March 11, 2025, Petitioner was ordered to submit a Motion for a Ruling on the Record, as well as any additional information addressing issues raised in Respondent's Rule 4(c) Report. ECF No. 17.

Petitioner did so on April 24, 2025. Petitioner's Motion for a Ruling on the Record ("Mot."), ECF No. 18. Respondent opposed the motion on May 27, 2025, reiterating the arguments set forth in the Rule 4(c) Report. Response to Motion for a Ruling on the Record ("Opp."), ECF No. 19. Petitioner filed a reply on May 30, 2025. The matter is ripe for resolution.

## II. Relevant Factual History

On November 1, 2022, Petitioner received a flu vaccine in his right shoulder and a pneumococcal vaccine in his left shoulder at Kaiser Permanente ("Kaiser") in Falls Church, Virginia. Ex. 1 at 1; Ex. 2 at 217-19. Petitioner had a pre-existing medical history of gout and type 2 diabetes mellitus. Ex. 2 at 223.

Fifteen days later, on November 16, 2022, Petitioner contacted Kaiser and complained about "arm pain after pneum vaccine and flu". Ex. 2 at 220, 222. He also reported "low voltage tinking [sic]" that extended to his hand, his neck, and shoulder. Petitioner was diagnosed with right arm pain, tingling, and meloxicam was prescribed. *Id.* at 223.

On December 2, 2022, Petitioner returned to Kaiser, complaining of continued right arm and shoulder pain, to his primary care provider Dr. Ayse Nur Turgut. Ex. 2 at 225. The record reports he had pain since the flu and pneumonia vaccines in his right upper arm that radiates to his neck. *Id.* at 226. X-rays and an ultrasound exam were unremarkable. Ex. 2 at 242, 248. Petitioner contacted Dr. Turgut again on December 23, 2022, stating that his pain had worsened. Ex. 2 at 251. He was referred to an orthopedist for further evaluation. *Id.* at 250.

Petitioner began physical therapy on January 10, 2023. Ex. 2 at 263. He attended six physical therapy sessions between January 10 and February 13, 2023. Ex. 2 at 273-

309. At this last session, he was improving but his symptoms had "not fully resolved." *Id.* at 307.

Between March 25 and August 28, 2023, petitioner had no further treatment for shoulder pain. However, petitioner had three intervening medical encounters where he did not report right arm pain. Ex. 2 at 311-12, 319-34. The encounters included a laboratory examination, a call for cold and upper respiratory infection symptoms, and an in-person urgent care visit. *Id.*

Seven months later, on September 14, 2023, Petitioner reported that he "still has shoulder pain" and "[i]buprofen and Tylenol doesn't help also causing abdominal pain." Ex. 2 at 341. Petitioner saw Dr. Turgut the next day. *Id.* at 343, 347-48. Dr. Turgut diagnosed petitioner with neck pain, gout, and DM 2 without complications, and prescribed meloxicam. *Id.* at 343, 347-48. A cervical spine x-ray showed arthritis in the spine, and petitioner was told that neck exercises and physical therapy would help with his symptoms. *Id.* at 356, 433.

On September 28, 2023, Petitioner sought to resume therapy for his shoulder. Ex. 2 at 365. On October 12, 2023, Petitioner presented for a physical therapy evaluation where he complained of right shoulder pain. The records note Petitioner had a "long history of shoulder pain", lists onset of "about one year ago", and attributed his injury to a "reaction from a vaccine shot." Ex. 2 at 368-69.

Petitioner submitted a declaration in support of his Petition, dated April 12, 2024. He explains that he paused medical treatment in February 2023 because he was caring for his wife during cancer treatment. Ex. 5.

## III. Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must preponderantly prove the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that he suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he received. Section 11(c)(1)(C).

---

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for his injury. *See* § 11(c)(1)(A)(B)(D)(E).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v.*

*Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Severity Requirement

The first issue to be resolved is whether Petitioner has demonstrated that he suffered "residual effects or complications of [the injury alleged] for more than six months after the administration of the vaccine," as required for eligibility under the Vaccine Program. Section 11(c)(1)(D)(i).

There is no dispute that Petitioner received a flu vaccine in his right shoulder on November 1, 2022. Therefore, he must demonstrate by preponderant evidence that his residual symptoms continued at least through May 1, 2023 (assuming onset of pain the same day as vaccination). *See,* e.g.*, Herren v. Sec'y of Health & Human Servs.*, No. 13-100V, 2014 WL 3889070, at *2 (Fed. Cl. Spec. Mstr. July 18, 2014); *see also Hinnefeld v. Sec'y of Health & Human Servs.*, No. 11-328V, 2012 WL 1608839, at *4-5 (Fed. Cl. Spec. Mstr. Mar. 30, 2012) (dismissing case where medical history revealed that petitioner's injury resolved less than two months after onset).

The record establishes that Petitioner's initial treatment occurred through February 13, 2023. Ex. 2 at 304-07. Petitioner next sought care seven months later, on September 14, 2023. Ex. 2 at 341. Respondent argues that Petitioner cannot establish severity due to the lengthy delay in treatment. Report at 6-7; Opp. at 1-2. Further, when Petitioner did return for additional care, he was diagnosed with neck pain, and exhibited degenerative changes to the cervical spine. Opp. At 2-3.

The record from September 2023, however, states that Petitioner "still" had shoulder pain at that time. Ex. 2 at 341. Further, the physical therapy record from later that month notes that Petitioner had a "long history of shoulder pain" he attributed to a "reaction from a vaccine" with onset of "about one year ago". Ex. 3 at 268-69. Additionally, Petitioner's declaration indicates that he stopped medical treatment in February 2023 to

assist in caring for his wife during cancer treatment. Ex. 5. Delaying personal treatment for this reason is wholly reasonable. Further, although Petitioner may have had additional issues (like neck pain) unrelated to the SIRVA, his October 2023 physical therapy records specifically linked his reported pain and care to the vaccinations from 2022. Ex. 2 at 368-69.

Respondent also argues that Petitioner had intervening medical appointments wherein he did not complain of right shoulder pain. Opp. at 2-3. However, these appointments were for treatment of other unrelated matters, including a laboratory examination and an upper respiratory infection. Ex. 2 at 311-312, 319-334. It is foreseeable a patient would not discuss shoulder issues at non-related treatment visits.

The overall record thus constitutes a sufficient showing of severity to meet the evidentiary standard. It is likely that Petitioner's symptoms persisted through the six-month deadline, despite the subsequent gap.

### B. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Right Shoulder Condition or Injury that would Explain his Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. I find that he has demonstrated a lack of history of pain, inflammation, or dysfunction of his right shoulder that would explain his symptoms.

#### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of his Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain on November 16, 2022, and associated it with his vaccinations from earlier that month. Ex. 2 at 220, 2227. Respondent does not dispute that Petitioner meets this criterion.

### 3. Petitioner's Pain was Limited to his Right Shoulder

Petitioner's pain was limited to his right shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

## C. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on November 1, 2022, in the United States. Ex. 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for his injury. Ex. 5; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that he suffered a Table SIRVA. Additionally, he has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

## Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master